In re ADVANCED TISSUE SCIENCES
SECURITIES LITIGATION

William McKitty; et al., Plaintiffs,

v.

Advanced Tissue Sciences, Inc.;
et al., Defendants.

No. 98–1146–IEG(LAB).

United States District Court,
S.D. California,
San Diego Division.

Oct. 20, 1998.

ORDER DENYING ARYEH GROUP'S (PRINCIPAL) MOTION FOR APPOINTMENT AS LEAD PLAINTIFF; DENYING ARYEH GROUP'S (ALTERNATE) MOTION FOR CREATION OF CO–LEAD PLAINTIFF/CO–LEAD COUNSEL STRUCTURE; DENYING ARYEH GROUP'S MOTION FOR APPROVAL OF LEAD COUNSEL; DENYING MCKITTY GROUP'S (PRINCIPAL) MOTION FOR APPOINTMENT AS LEAD PLAINTIFF; GRANTING MCKITTY GROUP'S (ALTERNATE) MOTION FOR APPOINTMENT OF SIX LEAD PLAINTIFFS; GRANTING MCKITTY GROUP'S MOTION FOR APPROVAL OF LEAD COUNSEL

GONZALEZ, District Judge.

This is a securities fraud action brought pursuant to the Securities Exchange Act of 1934 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Now before the Court are two competing motions for appointment as lead plaintiff and for approval of lead counsel, one from the Aryeh Plaintiffs Group ("Aryeh Group") and the other from the McKitty Plaintiffs Group ("McKitty Group").

## BACKGROUND

The instant motions arise from a total of seven putative class actions, each of which alleges violations of federal securities laws by Advanced Tissue Sciences, Inc., ("ATS") and certain of its officers and directors.[1] The complaints are brought pursuant to the Securities and Exchange Act, as well as Rule 10–b5 promulgated thereunder. Plaintiffs commonly allege that defendants issued false and misleading statements regarding the testing, and potential for FDA approval, of Dermagraft, a new product that ATS is seeking to market for the treatment of diabetic foot ulcers. Plaintiffs further allege that, in reliance upon defendants' alleged misstatements—in particular, defendants' representations about early clinical trial results of Dermagraft and its likelihood for FDA approval—plaintiffs purchased ATS stock at artificially inflated prices. Plaintiffs claim that they suffered, collectively, millions of dollars in damages when ATS's stock lost much of its value following a determination by the FDA that the data from ATS's clinical trials was insufficient to warrant approval of Dermagraft.

On June 22, 1998, the McKitty Group filed the first of the above-referenced actions against defendants. The McKitty Group consists of over 250 unrelated, individual investors who purchased approximately 720,000 shares of ATS stock between October 14, 1996, and June 11, 1998 (the proposed class period).[2] The McKitty Group claims to have

---

1. In order of filing, the seven related securities actions are: *William McKitty v. Advanced Tissue Sciences, Inc.*, Case No. 98cv1146–IEG (LAB), filed June 22, 1998; *Randall L. Johnson v. Advanced Tissue Sciences, Inc.*, Case No. 98cv1147–IEG (LAB), filed June 22, 1998; *Joseph Aryeh v. Advanced Tissue Science, Inc.*, Case No. 98cv1204–J (LAB), filed on June 30, 1998; *H. Mark Solomon v. Advanced Tissue Sciences, Inc.*, Case No. 98cv1216–IEG (POR), filed on July 1, 1998; *Wolf Sicherman v. Advanced Tissue Sciences, Inc.*, Case No. 98cv1230–BTM (CGA), filed July 2, 1998; *William Goldstein v. Advanced Tissue Sciences, Inc.*, Case No. 98cv1237–BTM (LAB), filed July 6, 1998; and *Scott Tubbs v.* *Advanced Tissue Sciences, Inc.*, Case No. 98cv1481–J (LSP), filed August 12, 1998. Each of these actions names as defendants Advanced Tissue Sciences, Inc. ("ATS"); Arthur J. Benvenuto, chairman and CEO of ATS; and Gail K. Naughton, president of ATS. On August 24, 1998, the Court consolidated the seven above-listed actions, pursuant to the parties' stipulation. The Court has not yet approved class action status for any of the above-listed actions.

2. (*See* Mem. in Supp. of McKitty Group's Mot. at 2–3.) The individual members of the McKitty Group are too numerous to list in this Order.

suffered an aggregate pecuniary loss of $4,508,950.[3]

On June 30, 1998, the Aryeh Group filed its action against defendants. The Aryeh Group consists of approximately 165 unrelated, individual investors who purchased roughly 400,000 shares of ATS stock during the proposed class period.[4] The Aryeh Group claims to have suffered an aggregate pecuniary loss of $3,096,682.02.[5]

On August 21, 1998, both the McKitty Group and Aryeh Group filed their present motions. The McKitty Group moves this Court for: (1) the appointment of the McKitty Group as lead plaintiff, or in the alternative, the appointment of six designated shareholders from the McKitty Group as lead plaintiffs,[6] and (2) approval of its selection of counsel. Similarly, the Aryeh Group moves this Court for: (1) the appointment of the Aryeh Group as lead plaintiff, and (2) approval of its selection of counsel.[7] Both parties have submitted opposition and reply briefs in support of their motions. On September 29, 1998, defendants filed a response.[8] No other plaintiff, or group of plaintiffs, has filed a motion seeking appointment as lead plaintiff.

---

**3.** The McKitty Group initially claimed to have suffered $4,040,161 in aggregate damages. (*See* Mem. in Supp. of McKitty Group's Mot. at 3.) As of September 29, 1998—the date that the McKitty Group filed its opposition to the Aryeh Group's motion—the McKitty Group had revised its estimated aggregate losses to $4,508,950. (*See* McKitty Group's Opp'n at 1.)

**4.** (*See* Mem. in Supp. of Aryeh Group's Mot. at 6.) As with the McKitty Group, the individual members of the Aryeh Group are too numerous to list in this Order.

**5.** The Aryeh Group initially claimed to have suffered $3,249,865.74 in aggregate damages. (*See* Mem. in Supp. of Aryeh Group's Mot. at 7.) As of October 5, 1998—the date that the Aryeh Group filed its reply to the McKitty Group's opposition—the Aryeh Group had revised its estimated aggregate losses to $3,096,682.02. (*See* Aryeh Group's Reply at 3.)

**6.** As an alternative to the appointment of the entire McKitty Group as lead plaintiff, the McKitty Group moves for the appointment of the following six shareholders from the McKitty Group as lead plaintiffs: William McKitty, Randall K. Johnson, H. Mark Solomon, Wolf Sicherman, William Goldstein, and Scott Tubbs. (*See* Mem. in Supp. of McKitty Group's Mot. at 1.)

## DISCUSSION

### A. Motion For Appointment As Lead Plaintiff

#### 1. Standard of Review

The motions now before the Court are governed by section 21 of the PSLRA. The PSLRA states that within twenty days after the date on which a class action is filed under the PSLRA:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, no later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u–4(a)(3)(A)(i). When there is more than one putative class asserting substantially the same claim under the PSLRA,

---

**7.** In its opposition to the McKitty Group's motion, the Aryeh Group also proposes that the Court appoint five representatives from each plaintiff group as co-lead plaintiffs and create a co-leadership structure for plaintiff's counsel. (*See* Aryeh Group's Opp'n at 2.)

**8.** The McKitty Group, in its reply brief, challenges defendants' standing to be heard on the issue of the appointment of the lead plaintiff, or plaintiffs, in this case. As the McKitty Group notes, several courts have concluded that the PSLRA does not allow defendants to be heard at this stage of the proceedings. *See, e.g., Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 60 (D.Mass. 1996) ("The text of that subsection [§ 78u–4(a)(3)(B)] clearly indicates that this issue is one over which only potential plaintiffs may be heard"); *Fischler v. AmSouth Bancorp.*, No. 96–1567–Civ–T–17A, 1997 WL 118429 (M.D.Fla. Feb. 6, 1997) ("The plain language of the Act dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff."). Whether defendants have standing to be heard on this matter is an issue that the Court does not need to address in order to decide the instant motions. The Court finds that it has the inherent authority to address the concerns raised by defendants *sua sponte*, and does so in this Order.

a court should first consolidate the actions, *see id.* § 78u–4(a)(3)(B)(ii), and as soon as practicable thereafter, appoint as lead plaintiff, "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *Id.* § 78u–4(a)(3)(B)(i).

In selecting the group of class members who are the most capable of adequately representing the class—i.e., the most adequate plaintiff—the PSLRA directs:

> the court shall adopt a presumption that the most adequate plaintiff ... is the person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u–4(a)(3)(B)(iii)(I).[9] This presumption "may be rebutted only upon proof ... that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

### 2. Legal Analysis

Having laid out the statutory standard for the appointment of lead plaintiff, the Court now turns to the parties' motions.

#### a. Analysis of Presumption's Requirements

##### i. Notice

Both the McKitty Group and Aryeh Group satisfy the first requirement of § 78u–4(a)(3)(B)(iii)(I). The McKitty Group published and disseminated the required statutory notice over the *Business Wire* on July 23, 1998, the day after the filing of McKitty's complaint. The Aryeh Group filed its motion for appointment as lead plaintiff within sixty days of the publication of the McKitty Group's notice, on August 21, 1998. Neither group disputes that the other group has satisfied the statutory notice requirement.

##### ii. Elements of Class Action

As for the third requirement, a wide-ranging analysis of whether the McKitty Group and Aryeh Group meet the requirements for class action certification is not required at this stage. For the purposes of a motion for appointment as lead plaintiff, a proposed lead plaintiff must only make a preliminary showing that he or she satisfies the requirements of Rule 23(a). *See, e.g., Gluck v. Cellstar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997); *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60 (D.Mass.1996). The Court must formally determine whether the lead plaintiffs meet the requirements of Rule 23(a) when the plaintiffs move for class certification.

For the limited purpose of analyzing the plaintiffs' motions for appointment as lead plaintiff, the Court finds that both the McKitty Group and Aryeh Group meet the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). First, both of the groups consist of hundreds of unrelated, individual investors. The purported class is so numerous that joinder of all members would be impracticable. Second, both groups allege that defendants misrepresented the results of Dermagraft's clinical trials as well as Dermagraft's prospects for FDA approval, and hence, the value of ATS's stock. Common questions of law and fact therefore exist. Third, the members of both groups allege damages caused by ATS's misrepresentations, and they seek to recover these damages pursuant to the same provisions of federal law. Typicality exists here because the claims asserted by both groups are based on the same legal theories and appear to arise from the same

---

9. Federal Rule of Civil Procedure 23(a) states that a plaintiff may sue as a class representative if the following conditions are met:

    (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

    Fed.R.Civ.P. 23(a).

course of conduct by defendants. Fourth, the interests of the individual members of both groups do not appear to be antagonistic to one another. The Court therefore finds that members of both groups could fairly and adequately represent the interests of the purported class.

### iii. Largest Financial Interest

The principal dispute between the McKitty Group and the Aryeh Group concerns the statutory presumption's second requirement.

■ As an initial matter, both groups dispute each other's estimated aggregate losses. Whereas the McKitty Group alleges that its members suffered a collective loss of $4,508,-950, (see McKitty Group's Opp'n at 1), the Aryeh Group argues that the McKitty Group only suffered an aggregate loss of $3,281,173, (see Aryeh Group's Reply at 3). Likewise, whereas the Aryeh Group alleges that its members suffered an aggregate loss of $3,096,682, (see id.), the McKitty Group claims that the Aryeh Group's losses are inflated by roughly $275,000, (see McKitty Group's Reply at 7 n. 8). Even assuming that the Aryeh Group's figures are correct—both as to the McKitty Group's losses and as to its own losses—the McKitty Group still has suffered a greater alleged aggregate loss of approximately $200,000.[10] In its opposition, the Aryeh Group concedes that the McKitty Group has a larger financial interest in the relief sought. (See Aryeh Group's Opp'n at 1–2.)

The parties disagree, not so much about which group suffered the greater aggregate loss, but about how much weight this factor should be given by the Court in designating the most adequate, or lead, plaintiff in this case. Whereas the McKitty Group argues that, all else equal, the determination of which group of investors suffered the greatest financial loss should be dispositive, (see McKitty Group's Reply at 2–5), the Aryeh Group characterizes the differential in alleged damages between the two groups as insignificant, (see Aryeh Group's Reply at 3–4) and appeals to the Court's equitable powers for the creation of a co-lead plaintiff/co-lead counsel leadership structure, (see id. at 4–5).

■ Although either of the competing groups could qualify as lead plaintiff in the absence of the other, where two or more parties are competing for appointment as lead plaintiff, the mandate of the PSLRA is unambiguous. All else equal, the PSLRA requires that a court appoint as lead plaintiff the "person or group of persons that ... in the determination of the court, has the *largest* financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis added). Because it is uncontested by the moving parties that the McKitty Group suffered the greater aggregate financial loss, under the plain language of the PSLRA, the McKitty Group is presumptively the most adequate plaintiff.[11]

### b. Analysis of Rebuttal Evidence

The next question, therefore, is whether the Aryeh Group has rebutted the statutory presumption in favor of the McKitty Group. As discussed previously, this presumption can be rebutted in only one of two ways: first, by a showing that the presumptively most adequate plaintiff either will not fairly or adequately protect the interests of the class; and, second, by a showing that the

10. The McKitty Group claims that the differential in its favor is closer to $600,000. (See McKitty Group's Reply at 4.)

11. The Court notes that neither party disputes that the appropriate analysis for the Court involves a comparison of aggregate group losses, as opposed to an examination of which group contains the member, or members, with the largest individual losses. Certain courts have rejected the notion that the PSLRA allows parties to pool their losses for purposes of the lead plaintiff determination. See, e.g., In re Donnkenny Inc. Securities Litig., 171 F.R.D. 156, 157 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiff defeats the purpose of choosing a lead plaintiff.") However, the majority of courts confronted with this issue have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination. See, e.g., City Nominees Ltd. v. Macromedia, Inc., No. C–97–3521–SC, slip op. at 5–7 (N.D.Cal. Jan. 23, 1998); In re Read-Rite Corp. Secs. Litig., No. C–97–20059–RWM, slip op. at 4–5 (N.D.Cal. May 27, 1997); In re Diamond Multimedia Sys., Inc., Sec. Litig., No. C–96–2644–SBA, slip op. at 2–4 (N.D.Cal. Jan. 13, 1997).

presumptively most adequate plaintiff is subject to unique defenses that render the plaintiff incapable of adequately representing the interests of the class. *See id.* § 78u–4(a)(3)(B)(iii)(II). The Aryeh Group has presented no evidence sufficient to rebut the statutory presumption in favor of the McKitty Group.[12] Accordingly, the Aryeh Group's principal motion for appointment as lead plaintiff is hereby **DENIED**.

### c. The Aryeh Group's Motion for the Creation of a Co-lead Plaintiff/Co-lead Counsel Structure

■ In the alternative, the Aryeh Group proposes that, if this Court denies its motion for appointment as lead plaintiff, then the Court should order both moving groups to share in the leadership of this case. (*See* Aryeh Group's Reply at 4–5.) Under the Aryeh Group's alternate motion, the Court would appoint ten individuals (five from each group) as co-lead plaintiffs and four law firms (two from each group) as co-lead counsel. (*See id.*)

The Aryeh Group's proposal—that the Court appoint co-lead plaintiffs and co-lead counsel from both moving groups—is unsupported by solid legal precedent. Although the Aryeh Group cites case law in support of its proposal, these cases are readily distinguishable from the circumstances of the present case. For example, in *In re Oxford Health Plans, Inc., Secs. Litig.*, 182 F.R.D. 42 (S.D.N.Y.1998), the court appointed three competing entities—a pension fund, an investment management company, and a group of individual investors—as co-lead plaintiffs. *See id.* at 44–45. Unlike *Oxford Health Plans*, however, the present case does not involve the same diversity of interests. Neither the McKitty Group nor Aryeh Group includes a pension fund or an institutional

investor in its membership; instead, both groups consist entirely of hundreds of unrelated, individual investors. The Aryeh Group also cites *In re Vista 2000 Secs. Litig.*, No. 1:96–CV–906–FMH, slip op. (N.D.Ga. July 2, 1996), in support of its proposal. In *Vista 2000*, the court appointed three co-lead counsel: the firm representing the group of plaintiffs with the largest aggregate loss, the firm representing the individual with the largest individual loss, and a firm with a local office. *See id.* In the present case, however, the McKitty Group represents each of these three interests.

In addition to lacking a solid legal basis, the Aryeh Group's proposal is in tension with the PSLRA's goal of minimizing lawyer-driven litigation. As another judge in this district concluded in response to a similar proposed co-leadership structure, such an arrangement "would unnecessarily increase the time and expense spent on preparing and litigating the case" and thus "would not further the purposes of [the] PSLRA." *Reiger v. Altris Software Inc.*, No. 98cv0528–J (JFS), 1998 U.S. Dist. LEXIS 14705, at *18 (S.D.Cal. Sept. 11, 1998) (quoting *Gluck*, 976 F.Supp. at 549) (internal quotation marks omitted). The Aryeh Group has acknowledged that both it and the McKitty Group are similarly composed. (*See* Aryeh Group's Opp. at 5–6.) Thus, the appointment of members from both moving groups would not serve to add any new, unrepresented interests to the leadership of this suit.[13] Furthermore, contrary to the Aryeh Group's assertion that the Court's rejection of its proposal would leave the membership of the Aryeh Group entirely unrepresented, (*see id.* at 6), the Court notes that it is the very nature of a class action that the lead plaintiff serves to represent the interests of the entire class.[14]

---

**12.** The Aryeh Group does allege errors in the McKitty Group's calculations of its aggregate losses. (*See* Aryeh Group's Opp. at 6–8.) The Court, however, does not find the McKitty Group's computational and typographical errors to be so substantial as to overcome the statutory presumption in favor of the McKitty Group.

**13.** *See generally* Manual for Complex Litigation 3rd § 20.221, at 27–28 ("Because the appointment of committees of counsel can lead to sub-

stantially increased costs, they should not be made unless needed; a need is most likely to exist in cases in which the interests and positions of group members are sufficiently dissimilar to justify giving them representation in decision making.")

**14.** *Cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (stating that a class representative, once

Because the McKitty Group has independently satisfied the PSLRA's requirements for appointment as lead plaintiff, the Court sees no reason to adopt the Aryeh Group's proposal. The McKitty Group already has two proposed co-counsel; adopting the Aryeh Group's proposal would only serve to add two more. Accordingly, the Court hereby **DENIES** the Aryeh Group's proposed alternate motion.

### d. The Number of Lead Plaintiffs

■ The one remaining issue concerns the propriety of designating the entire membership of the McKitty Group—approximately 250 unrelated, individual investors—as lead plaintiff. The Court finds that, if approved, the expansive number of lead plaintiffs proposed by the McKitty Group in its principal motion would subvert the legislative intent behind the PSLRA and would threaten the interests of the purported future class.

The idea of appointing over 250 unrelated, individual investors as lead plaintiffs runs afoul of Congress's intent in enacting the PSLRA. The very purpose of the PSLRA was to curtail the influence of professional, figurehead plaintiffs by transferring "primary control of private securities litigation from lawyers to investors." S.Rep. No. 104–98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683, 685.[15] Although the PSLRA expressly contemplates the appointment of more than one lead plaintiff, *see, e.g.*, 15 U.S.C. § 78u–4(a)(3)(B)(i) (stating that the court "should appoint as lead plaintiff the *member or members* of the purported plaintiff class that the court determines to be the ·most capable of adequately representing the interests of the class members") (emphasis added), the courts have repeatedly rejected motions for the appointment of large amalgamations of unrelated persons as lead plain-

tiffs as being directly contrary to the PSLRA, *see, e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D.Minn.1998) (rejecting the appointment of a group of over 300 investors as lead plaintiff as subverting the intent of Congress and as being "too unwieldy to allow for the just, speedy and inexpensive determination of this action"). Instead, courts that have aggregated financial losses for the purpose of designating the lead plaintiff have tended to confine their appointments of lead plaintiff to small groups of individuals.[16] In deciding how many lead plaintiffs to appoint in a given case, the courts have applied a "case-by-case inquiry" and "a rule of reason" approach. *Id.* at 409.[17] Where the courts have found that a proposed group of lead plaintiffs is too large to actively represent the interests of the purported class, the courts have exercised their supervisory authority to restrict the number of lead plaintiffs. *Id.*

Such a restriction is warranted in the present case. The McKitty Group has presented no rationale for the appointment of its entire group as lead plaintiff. Even though the PSLRA contemplates the appointment of more than one individual as lead plaintiff, the Court finds that the appointment of over 250 unrelated investors is inconsistent with the goal of restoring control over lawsuits to plaintiffs, instead of counsel. A group of over 250 plaintiffs would also make the administration of this action unnecessarily complex and unwieldy. Under the circumstances of this case, the Court finds that the McKitty Group's alternate motion better comports with the purposes of the PSLRA. Accordingly, the Court **DENIES** the McKitty Group's principal motion for the appointment of the entire McKitty Group as lead plaintiff, and instead **GRANTS** the McKitty Group's

designated by the court, is a fiduciary for the absent class members).

**15.** *See also Ravens v. Iftikar*, 174 F.R.D. 651, 654 (N.D.Cal.1997) (explaining that the intent of Congress was "to eliminate figurehead plaintiffs who exercise no meaningful supervision of the litigation").

**16.** *See, e.g., Zuckerman v. Foxmeyer Health Corp.*, No. 3:96–CV–2258–T, slip op. at 5 (N.D.Tex. Mar. 28, 1997) (appointing eleven individual plaintiffs

with the largest financial interest collectively as lead plaintiff).

**17.** *See In re Oxford Health Plans, Inc. Secs. Litig.*, 182 F.R.D. 42 (S.D.N.Y.1998) ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case.")

alternate motion for the appointment of the McKitty Group's six designated group members as lead plaintiffs.

## B. Motion for Approval of Lead Counsel

### 1. Standard of Review

The PSLRA states that, once the court has designated the most adequate, or lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). A court may disturb the lead plaintiff's choice of counsel only if it appears necessary to "protect the interests of the class." *Id.* § 78u–(a)(3)(B)(iii)(II)(aa).

### 2. Legal Analysis

The six members of the McKitty Group appointed as lead plaintiffs (above) have retained the law firms of Milberg, Weiss, Bershad, Hynes & Lerach LLP, and Berger & Montague, P.C., to serve as co-lead counsel. The Court has reviewed the law firms' resumes and is satisfied that they are fully capable of serving competently as lead counsel in this case. Both firms are highly qualified in that they possess substantial litigation experience in the area of securities class actions on behalf of individual investors. In light of the plain language of § 78u–4(a)(3)(B)(v), which vests authority in the lead plaintiffs to select and retain their choice of legal representation, the Court will not disturb the lead plaintiffs' choice of counsel.

## CONCLUSION

For the reasons stated above, the Court hereby **ORDERS** the following:

1. The Aryeh Group's (principal) motion for appointment as lead plaintiff is **DENIED**;

2. The Aryeh Group's (alternate) motion for the creation of a co-lead plaintiff/co-lead counsel structure is **DENIED**;

3. The Aryeh Group's motion for approval of lead counsel is **DENIED**;

4. The McKitty Group's (principal) motion for appointment as lead plaintiff is **DENIED**;

5. The McKitty Group's (alternate) motion for the appointment of six lead plaintiffs—William McKitty, Randall K. Johnson, H. Mark Solomon, Wolf Sicherman, William Goldstein, and Scott Tubbs—is **GRANTED**, provided that no later than twenty (20) days from the file-stamped date of this Order, the McKitty Group files certifications for those persons whose certifications have not previously been filed.[18]

6. The McKitty Group's motion for approval of Milberg, Weiss, Bershad, Hynes & Lerach LLP, and Berger & Montague, P.C., as co-lead counsel is **GRANTED**;

7. As previously agreed upon by the parties, the lead plaintiffs shall file a consolidated amended complaint within forty-five (45) days of the file-stamped date of this Order;

8. Defendants shall file their responsive pleading within forty-five (45) days after service of the consolidated complaint.

**IT IS SO ORDERED.**

**18.** The PSLRA requires each plaintiff who seeks to serve as a representative party on behalf of a class to file a "sworn certification" with his or her complaint that does the following: (i) states that the plaintiff has reviewed the complaint and authorized its filing; (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this chapter; (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary; (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint; (v) identifies any other action under this chapter, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.... 15 U.S.C. § 78u–4(a)(2)(A).