Marc NEWMAN, et al., Robert Gluck, et al., Alan Davidson, et al., Inglewood Holdings, Ltd, et al., David Pain, et al., Guerrilla Ira Partners, et al., Jeff Glass, et al., Kelso Capital, et al., Plaintiffs,

v.

EAGLE BUILDING TECHNOLOGIES, et al., Defendants.

Nos. 02–80294–CIV, 02–80302–CIV, 02–80323–CIV, 02–80340–CIV, 02–80372–CIV, 02–80403–CIV, 02–80492–CIV, 02–80493–CIV.

United States District Court,
S.D. Florida,
West Palm Beach.

July 31, 2002.

Adam Stephen Doner, Robert E. Gordon, Gordon & Doner, Palm Beach Gardens, FL, Peter Harold Rachman, Emily Cornelia Komlossy, Goodkind, Labaton, Rudoff & Sucharow, Fort Lauderdale, FL, Sandy A. Liebhard, Jeffrey M. Haber, Joseph R. Seidman, Bernstein, Liebhard & Lifshitz, New York City, Michael J. Pucillo, Wendy Hope Zoberman, Berman, DeValerio, Pease, Tabacco, Burt & Pucillo, West Palm Beach, FL, Neil S. Baritz, Dreier, Baritz & Colman, Boca Raton, FL, Leonard Barrack, Barrack, Rodos & Bacine, Philadelphia, PA, for plaintiffs.

Scott Lawrence Cagan, Broad & Cassel, Miami, FL, Richard Aldo Serafini, Broad & Cassel, Fort Lauderdale, FL, John R. Har-

grove, Heinrich, Gordon, Hargrove, Weihe & James, Fort Lauderdale, FL, for defendants.

### *ORDER APPOINTING LEAD PLAINTIFF, APPROVING LEAD COUNSEL, AND CONSOLIDATING CASES*

RYSKAMP, District Judge.

THIS CAUSE is before the Court upon four different motions for consolidation of the cases, appointment of lead plaintiff, and approval of lead counsel, brought by proposed lead plaintiffs the Davidson Group, Mark Newman and Ilex Partners (the "Newman/Ilex Group"),[1] the 20/20 Fund,[2] and the Rice Opportunity Fund. A fifth motion for consolidation, appointment of lead plaintiff, and approval of lead counsel, brought by Econor, Inc. and Clearview International, was withdrawn and no longer remains pending. These matters are now ripe for adjudication.

### *I. BACKGROUND*

These cases are securities class actions, brought under section 10(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") on behalf of all persons or entities who bought Eagle Building Technologies, Inc. ("Eagle") common stock during the period August, 2000 through February, 2002 (the "Class Period").

The complaints state claims against Eagle, certain of its officers, and its outside auditing firm, Tanner & Co. The claims asserted in these cases arise out of a series of false and misleading statements concerning Eagle's quarterly financial results for the second and third quarters of 2000, its year-end financial results, and its quarterly financial results for the first, second, and third quarters of 2001. In particular, it is alleged that a material amount of the revenues and earnings reported in those financial results included fictitious sales to a purported project in India. The complaints allege that as a result of

these false and misleading statements, the price of Eagle common stock was artificially inflated throughout the Class Period causing Plaintiffs and other members of the Class to suffer damages.

In the various motions before the Court, four proposed lead plaintiffs seek to have these cases consolidated, be appointed lead plaintiff, and have its counsel approved as lead counsel. After all motions were filed in this Court, proposed lead plaintiffs Davidson Group, 20/20 Fund, and the Newman/Ilex Group filed responses and replies in which each argues that it should be appointed lead plaintiff and that its counsel should be approved as lead counsel. No proposed lead plaintiff objects to the consolidation of these cases. Defendant Eagle Building Technologies consents to the consolidation of these cases and does not take a position with respect to the appointment of lead plaintiff and approval of lead counsel.

### *II. DISCUSSION*

The Court will address consolidation, appointment of lead plaintiff, and approval of lead counsel in turn.

#### Consolidation

█ Rule 42(a) of the Federal Rules of Civil Procedure provides: "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Under Rule 42(a), this Court has broad discretion to consolidate cases pending within its district. *See Hargett v. Valley Fed'l Savings Bank*, 60 F.3d 754, 765 (11th Cir.1995). Consolidation of shareholder class actions is recognized as benefitting the court and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the

---

1. The Newman Group and Ilex Partners originally brought separate motions for consolidation, appointment of lead plaintiff and approval of lead counsel. However, Mark Newman and Ilex Partners submitted an amended motion in which they joined together as proposed lead plaintiff, thereby mooting their original separate motions.

2. The 20/20 Fund did not move to consolidate, only to appoint lead plaintiff and approve lead counsel.

expenditure of time and money by all persons concerned. *See In re Olsten Corp. Sec. Lit.,* 3 F.Supp.2d 286, 294 (E.D.N.Y.1998).

The class actions currently before the Court are ideally situated for consolidation. The complaints present virtually identical claims for relief based upon a single course of conduct during the Class Period. Since the complaints present similar issues of law and fact, consolidation of these actions promotes judicial economy by streamlining and simplifying pre-trial, discovery and class certification issues, and by reducing waste, confusion, and delay that would result from multiple trials. Consolidation of these class actions is therefore appropriate.

### Selection of Lead Plaintiff

The Private Securities Litigation Reform Act of 1995 (the "PSLRA"), amending Section 21D of the Exchange Act, establishes the procedure for appointment of lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(1). Section 21D(a)(3)(A)(i) of the Exchange Act requires that "within twenty days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (1) of the pendency of the action, the claims asserted therein, and the purported class period; and (2) that, not later than sixty days after the day on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u–4(a)(3)(A)(i). The court is to consider any motion made by a purported class member to serve as lead plaintiff as soon as practicable after deciding any pending motion to consolidate the actions. *See* 15 U.S.C. § 78u–4(a)(3)(B).

The selection of the lead plaintiff for this securities litigation is governed by a rebuttable presumption that the most adequate plaintiff "is the person or group of persons that: (aa) has either filed the complaint or made a motion in response to a notice ... (bb) in the determination of the court, has

the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Rule 23 of the FRCP." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

Each proposed lead plaintiff asserts that it is the most adequate lead plaintiff as defined by the PSLRA. There is no dispute that each of the proposed lead plaintiffs either filed a complaint or made a motion in response to a notice. The determination of the lead plaintiff therefore hinges on whether the proposed lead plaintiff has the largest financial interest and whether the proposed lead plaintiff will fairly and adequately represent the class as is required under Rule 23 of the Federal Rules of Civil Procedure and the PSLRA.

█ The most important factor in determining the lead plaintiff is the amount of financial interest claimed. *See Sherleigh Assoc. LLC v. Windmere–Durable Holdings, Inc.,* 184 F.R.D. 688, 692 (S.D.Fla.1999) (choosing as lead plaintiff the individual who has the largest financial interest); *Ehlert v. Singer,* 185 F.R.D. 674, 677 (M.D.Fla.1999) (stating that the bottom line is that "the plaintiff with the most at stake is usually the one that is best able to negotiate and oversee counsel's actions"). The various financial interests claimed by each proposed lead plaintiff are as follows:

| | |
|---|---|
| Rice Opportunity Fund: | $ 294,991 |
| 20/20 Fund | $ 496,025 |
| Newman/Ilex Group | $ 751,975 |
| Davidson Group | $1,467,288 |

There is no dispute that as calculated and reported, the Davidson Group has the largest claimed financial interest. The 20/20 Fund argues that the Davidson Group should not be appointed the lead plaintiff, however, because (1) the Davidson Group improperly aggregated individuals and entities to arrive

at the largest financial interest and (2) the Davidson Group cannot adequately represent the class. The Newman/Ilex Group also argues that the Davidson Group cannot adequately represent the class. The Court addresses each of these arguments in turn.

### Aggregation

The Davidson Group consists of four individuals and two European banking entities. In contrast, the Newman/Ilex Group consists of one individual and one corporate entity, and the 20/20 Fund and the Rice Opportunity Fund each consist of one corporate entity. The idea that plaintiffs may aggregate their losses into a group to show the largest financial interest derives from the language of the PSLRA which states that the most adequate plaintiff is the "person or group of persons." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

District courts in the Southern District of Florida have allowed aggregation. *See Malin v. IVAX Corp.*, 1996 U.S.Dist. LEXIS 22452, at *6 (S.D.Fla.1996) (Moreno, J.); *In re Sunbeam Sec. Lit.*, 1998 WL 1990884, at *4, 1998 U.S.Dist. LEXIS 21490, at *13 (S.D.Fla.1998) (Middlebrooks, J.); *In re Citrix Systems, Inc. Sec. Lit.*, Case No. 00–6796–CIV–DIMITROULEAS, slip op. at 1 (S.D.Fla. Oct. 5, 2000); *In Re Partsbase.com, Inc. Sec. Lit.*, Case No. 01–8319–CIV–UNGARO–BENAGES, slip op. at 7 (S.D.Fla. June 25, 2001); *Graf v. Cyber–Care, Inc.*, Case No. 00–8404–CIV–RYSKAMP, slip op. at 2 (S.D.Fla. Nov. 9, 2001). District courts across the country, however, are divided as to whether to allow aggregation of individuals and entities in arriving at the proposed lead plaintiff and the amount of financial interest claimed. Some courts refuse to permit aggregation or allow very limited aggregation; some courts allow aggregation only among previously related individuals; some courts permit all possible aggregation. *See Burke v. Ruttenberg*, 102 F.Supp.2d 1280, 1322 (N.D.Ala.2000) (discussing the different opinions of the district courts on the issue of aggregation). The courts that refuse to permit aggregation or limit aggregation assert that doing so allows for effective management of the litigation, *see In re Baan Co. Sec. Lit.*, 186 F.R.D. 214, 215–217 (D.D.C.1999), and keeps with the intent of the PSLRA, *see*

*In re Advanced Tissue Sciences Sec. Lit.*, 184 F.R.D. 346, 352 (S.D.Cal.1998). The courts that limit aggregation to only those previously related reason that "the content and structure of the [PSLRA] evince an intent that the group consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys." *In re Telxon Corp. Sec. Lit.*, 67 F.Supp.2d 803, 813 (N.D.Ohio 1999). The courts that permit absolute aggregation assert that the PSLRA does not require that the lead plaintiffs be related, *see In re Orthodontic Centers of Amer., Inc. Sec. Lit.*, 2001 WL 1636846, at *5, 2001 U.S.Dist. LEXIS 21816, at *14 (E.D.La. Dec. 17, 2001), and follow the line of reasoning that "while the assertion can legitimately be made that the larger the number of proposed lead plaintiffs, the greater the dilution of the control that those plaintiffs can maintain over the conduct of the putative class action, an equally cogent assertion can be broached that, when more greatly numbered, the lead plaintiffs can more effectively withstand any supposed effort by class counsel to seize control of the class claims." *D'Hondt v. Digi Int'l Inc.*, 1997 WL 405668, at *3 (D.Minn.1997).

There is no case law from the Eleventh Circuit, or from the majority of the circuits, regarding the issue of aggregation for purposes of lead plaintiff. The Third Circuit, however, has specifically endorsed aggregation stating that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" *In re Cendant Corp. Lit.*, 264 F.3d 201, 266 (3d Cir.2001).

This Court adopts the reasoning of the Third Circuit and finds that aggregation is acceptable for the purposes of lead plaintiff in private securities litigation. This Court does not find it appropriate to limit aggregation when the PSLRA specifically allows for a group of persons to serve as lead plaintiff. There is no requirement contained in the

PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as the lead plaintiff. Following the PSLRA, this Court focuses not on the composition of the Davidson Group, but rather on whether the Davidson Group is adequate to serve as lead plaintiff. The Court therefore finds that the aggregation of individuals and entities contained in the Davidson Group is allowable and that the Davidson Group has the largest financial interest claimed in this litigation.

### Adequacy

The 20/20 Fund and the Newman/Ilex Group argue that even if the Davidson Group has the largest claimed financial interest in the Eagle litigation, the Davidson Group should not be appointed lead plaintiff because it cannot adequately represent the class. Under Rule 23 of the Federal Rules of Civil Procedure, a class representative must establish that its claims are typical of those of the class and that it can adequately represent the class. *See Fischler v. AmSouth Bancorporation,* 1997 WL 118429, at *2 (M.D.Fla. Feb.6, 1997). Furthermore, under the PSLRA, the presumption favoring the appointment of a certain proposed lead plaintiff may be rebutted by a showing that the proposed lead plaintiff will not fairly and adequately represent the class and/or that the proposed lead plaintiff is subject to unique defenses. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The 20/20 Fund and the Newman/Ilex Group argue that the Davidson Group is inadequate to represent the class and therefore runs afoul of Rule 23(a) and the PSLRA for three reasons.

1. Mr. Kashner's Securities Violations

■ The opposing proposed lead plaintiffs argue that the Davidson Group is inadequate because Mr. Kashner, one of the individuals in the group, has been publicly cited as violating SEC and NASD rules in two instances. This Court agrees that Mr. Kashner is inadequate but does not extend the inadequacy of Mr. Kashner to the entire Davidson Group.

Mr. Kashner was publicly cited as violating SEC and NASD rules in two instances. In *In re Victor L. Kashner and Kasher Davidson Securities Corp.,* File No. 3–9049, Release No. 7316, July 26, 1996, the SEC found that Mr. Kashner's brokerage firm, Kashner Davidson, had allowed an unregistered individual to promote and sell speculative stocks from its offices; that Mr. Kashner had served as the promoter's registered representative; and that a company Mr. Kashner owned issued a newsletter with an article on one of the stocks being promoted from the Kashner Davidson brokerage firm, which contained misleading statements. *Id.* at 2–3. As a result of the SEC's findings, among other items: a cease and desist order was entered against Mr. Kashner and Kashner Davidson; Mr. Kashner was barred from acting in a supervisory capacity with any broker for a period of two years, after which he would be granted the right to re-apply; and Mr. Kashner and Kashner Davidson were ordered to disgorge their profits, and pay prejudgment interest, on the sales of the stock. *Id.* at 3–5. Furthermore, during April 1996, Mr. Kashner and Kashner Davidson were fined $10,000 and required to pay $11,863 by the NASD after they submitted a Letter of Acceptance, Waiver and Consent in another incident concerning twenty principal sales of common stock with public customers at unfair prices. *See* NASD's Disciplinary Actions Reported for April, 1996, Ex. 2 to 20/20 Fund's Response.

These two violations of securities laws concerning Mr. Kashner and Kashner Davidson raise serious questions regarding the adequacy of Mr. Kashner to serve as a lead plaintiff. The citation by the SEC, in particular, was not a minor slap on the wrist. Mr. Kashner had his supervisory license revoked, a major punishment. Having been found by the SEC and the NASD to have violated certain securities laws, Mr. Kashner may be subject to unique defenses that might imperil certification of a class in this case. Furthermore, Mr. Kashner's violations raise concerns about his moral character. Courts have refused to appoint individuals of questionable character to serve as fiduciaries in class actions. *See Hall v. Nat'l Recovery Sys. Inc.,* 1996 WL 467512, at *5–6 (M.D.Fla. Aug.9, 1996) (pat-

tern of prior misconduct by proposed class representative raised concerns about reliability and conscientiousness, justifying denial of class certification); *In re Network Assoc., Inc. Sec. Lit.,* 76 F.Supp.2d 1017, 1029 (N.D.Cal.1999) (fraud investigation of proposed lead plaintiff was a "major negative" to entity's appointment as lead plaintiff, holding "the Court is unwilling to install an enterprise under such a cloud in a position of trust and confidence"). Due to the seriousness of the violations by Mr. Kashner and his brokerage firm, this Court finds Mr. Kashner inadequate to serve as a lead plaintiff for this securities litigation.

The opposing proposed lead plaintiffs argue that Mr. Kashner's past violations of securities laws are problematic for Mr. Davidson, another individual of the Davidson Group, as well as Mr. Kashner. The opposition argues that Mr. Davidson was part of the brokerage firm Kashner Davidson and that Mr. Davidson was closely aligned with Mr. Kashner. This Court disagrees.

Mr. Davidson has admitted to doing business with Mr. Kashner. *See* Declaration of Alan Davidson ¶ 5, Ex. E to Davidson Group's Reply. However, Mr. Davidson never served as an owner, officer, or director of Kashner Davidson. *See id.* ¶ 2. Furthermore, the citations by the SEC and the NASD only list Mr. Kashner and Kashner Davidson as the violators of securities laws, and do not include Mr. Davidson. *See id.* ¶ 4; NASD's Disciplinary Actions Reported for April, 1996; *In re Victor L. Kashner and Kasher Davidson Securities Corp.,* File No. 3–9049, Release No. 7316. Simply doing business with Mr. Kashner is insufficient for this Court to judge Mr. Davidson's moral character or to place blame on Mr. Davidson for Mr. Kashner's violations of securities laws.

The only entity that is inadequate for the position of lead plaintiff due to Mr. Kashner's violations of securities laws is Mr. Kashner himself; all other members of the Davidson Group withstand scrutiny regarding the securities violations. Because of Mr. Kashner's inadequacy, this Court does not allow Mr. Kashner to remain in the Davidson Group. Such finding does not kill the ability of the remaining Davidson Group to serve as lead plaintiff. *See Burke,* 102 F.Supp.2d at 1328 (concluding that the court can choose plaintiffs from among the members of the proposed group to serve as lead plaintiff); *In re Razorfish, Inc. Sec. Lit.,* 143 F.Supp.2d 304 (S.D.N.Y.2001) (choosing one plaintiff from a group of plaintiffs proposed as lead plaintiff and selecting the one as the sole lead plaintiff). Removal of Mr. Kashner due to his inadequacy to serve as the lead plaintiff leaves the Davidson Group with a claimed financial interest of well over one million dollars. This Court, thus, continues to examine the adequacy of the Davidson Group without Mr. Kashner.

### 2. Efficiency of the Group

The opposing proposed lead plaintiffs argue that the Davidson Group is inadequate because the conglomeration of four individuals and two European banking entities making up this group cannot efficiently and effectively coordinate and oversee this litigation. This Court disagrees.

There is nothing in the record to suggest that the individuals and banks making up the Davidson Group without Mr. Kashner will be unable to coordinate this litigation. The five individuals and banks that make up the Davidson Group without Mr. Kashner is of manageable size. *See In re Baan,* 186 F.R.D. at 216–217 (citing the SEC's memorandum as stating "a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and lawyers ... ordinarily this should be no more than three to five persons.") Further, the emphasis that the opposing lead plaintiffs place on the fact that the banks are located in Europe is of little significance. In light of today's travel and communication methods, the geographical location of the members of the Davidson Group are irrelevant. *See Bell v. Ascendant Solutions, Inc.,* 2002 WL 638571, at *4–5, 2002 U.S.Dist. LEXIS 6850, at *16–17 (N.D.Tex. April 17, 2002) (finding that the inclusion of foreign plaintiffs in the lead plaintiff group is not a negative but rather is a positive which "helps to create balance among the demographics of the lead plaintiff group members, and improves diversity of experience").

**506**

### 3. Banks' Interest

■ The opposing proposed lead plaintiffs argue that the banking entities cannot adequately represent the class because the banks do not have a sufficient interest in the outcome of this case. The opposing proposed lead plaintiffs assert that the banking entities do not have a sufficient interest because they bought Eagle securities on behalf of clients as opposed to buying the securities for themselves. This Court rejects such argument in its entirety.

The fact that the banks bought the securities on behalf of clients does not mean that the banks are inadequate lead plaintiffs. *See The EZRA Charitable Trust v. Rent–Way, Inc.*, 136 F.Supp.2d 435, 442 (W.D.Pa.2001); *Alfan v. Caprock Comm. Corp.*, 2000 U.S.Dist. LEXIS 21743, at *7–10 (N.D.Tex. Dec. 11, 2000). There is sufficient evidence in the record that the banks do have an interest in this litigation and that the banks do take this litigation seriously. The banks have knowingly decided to participate in the prosecution of this action, have declared their intent to actively participate in the litigation, and have agreed to provide testimony at a deposition or at a trial. *See* Declaration of the Banks ¶¶ 4, 6–7, Ex. H to the Davidson Group's Reply.

The Davidson Group without Mr. Kashner has the largest claimed financial interest at stake in this litigation and is adequate to serve as lead plaintiff. No argument made by the opposing proposed lead plaintiffs rebut the presumption that the Davidson Group without Mr. Kashner is the most adequate lead plaintiff. This Court therefore appoints the Davidson Group without Mr. Kashner as the lead plaintiff in the Eagle Building Securities Litigation.

### Approval of Lead Counsel

Section 21D(a)(3)(B)(v) of the Exchange Act provides that the most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class as Lead Counsel." 15 U.S.C. § 78u–4(a)(3)(B)(v). The Davidson Group moves to have their counsel, Rabin & Peckel LLP, Sichenzia, Ross, Friedman & Ference LLP, and Weiss & Yourman, approved as co-lead counsel and Cauley Geller Bowman & Coates as liaison counsel.

No proposed lead plaintiff or Defendant has objected to the approval of any of the proposed lead counsel. Furthermore, the Court is not independently aware of any reason why Rabin & Peckel LLP, Sichenzia, Ross, Friedman & Ference LLP, and Weiss & Yourman, should not be approved as co-lead counsel and why Cauley Geller Bowman & Coates should not be approved as liaison counsel. Thus, the Court approves Rabin & Peckel LLP, Sichenzia, Ross, Friedman & Ference LLP, and Weiss & Yourman, as co-lead counsel and Cauley Geller Bowman & Coates as liaison counsel for the Eagle Building Securities Litigation.

### III. CONCLUSION

Accordingly, for the reasons stated above and upon review of the pertinent portions of the records, it is hereby:

ORDERED AND ADJUDGED as follows:

1. The various motions to consolidate, appoint lead plaintiff, and approve lead counsel are adjudicated as follows:

  (A) Proposed Lead Plaintiff the Davidson Group's Motion to Consolidate, Appoint Lead Plaintiff, and Approve Lead Counsel, filed May 31, 2002, is **GRANTED IN PART** and **DENIED IN PART** as explained herein;

  (B) Proposed Lead Plaintiff the 20/20 Fund's Motion to Appoint Lead Plaintiff and Approve Lead Counsel, filed May 31, 2002, is **DENIED;**

  (C) Proposed Lead Plaintiff the Rice Opportunity Fund's Motion to Consolidate, Appoint Lead Plaintiff, and Approve Lead Counsel, filed May 31, 2002, is **GRANTED IN PART** and **DENIED IN PART** as explained herein;

  (D) Proposed Lead Plaintiff the Newman/Ilex Group's Amended Motion to Consolidate, Appoint Lead Plaintiff, and Approve Lead Counsel, filed June 17, 2002, is **GRANTED IN PART** and

**DENIED IN PART** as explained herein;

(E) Proposed Lead Plaintiff the Mark Newman Group's Motion to Consolidate, Appoint Lead Plaintiff, and Approve Lead Counsel, filed May 31, 2002, is **DENIED AS MOOT;**

(F) Proposed Lead Plaintiff Ilex Partners' Motion to Consolidate, Appoint Lead Plaintiff, and Approve Lead Counsel, filed May 31, 2002, is **DENIED AS MOOT;**

2. The above-captioned actions are consolidated for all purposes, to be captioned as In re Eagle Building Technologies, Inc. Securities Litigation, Case No. 02–80294–CIV–RYSKAMP;

3. The Davidson Group without Mr. Kashner is appointed Lead Plaintiff;

4. The Davidson Group's selection of Rabin & Peckel LLP, Sichenzia, Ross, Friedman & Ference LLP, and Weiss & Yourman, as co-lead counsel and Cauley Geller Bowman & Coates as liaison counsel is approved.