Mohammad YOUSEFI and David Kane, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

LOCKHEED MARTIN CORPORATION, Vance Coffman, Marcus Bennett, Norman Augstine, Vincent Marafino, James Blackwell, and Thomas Corcoran, Defendants.

Joseph Edmonds, on behalf of himself and all others similarly situated, Plaintiff,

v.

Lockheed Martin Corporation, Vance Coffman, Marcus Bennett, Norman Augstine, Vincent Marafino, James Blackwell, and Thomas Corcoran, Defendants.

William Kretchmeyer, on behalf of himself and all others similarly situated, Plaintiff,

v.

Lockheed Martin Corporation, Vance Coffman, Marcus Bennett, Norman Augstine, Vincent Marafino, James Blackwell, and Thomas Corcoran, Defendants.

Nos. CV99–0372LGBRNBX, CV99–1266LGBRBNX, CV99–1476LGBRNBX.

United States District Court, C.D. California.

May 25, 1999.

William S Lerach, Alan Schulman, Darren J Robbins, Randall J Baron, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Lawrence J Lederer, Daniel Berger, Berger & Montague, Philadelphia, PA, for Mohammad Yousefi, on behalf of themselves and all others similarly situated, plaintiff.

William S Lerach, Alan Schulman, Darren J Robbins, Randall J Baron, Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, Lawrence J Lederer, Daniel Berger, Berger & Montague, Philadelphia, PA, Marc A Topaz, Schiffrin & Barroway, Bala Cynwyd, PA, for David Kane, on behalf of themselves and all others similarly situated, plaintiff.

Seth Alben Aronson, O'Melveny & Myers, Los Angeles, CA, for Lockheed Martin Corp, Vance Coffman, Marcus Bennett, Norman Augustine, Vincent Marafino, James Blackwell, Thomas Corcoran, defendants.

ORDER SUA SPONTE STRIKING PARTIES FROM THE MOTION TO CONSOLIDATE; ORDER GRANTING MOTION TO CONSOLIDATE; ORDER DENYING MOTION FOR DESIGNATION OF LEAD PLAINTIFFS; ORDER DENYING MOTION FOR DESIGNATION OF LEAD COUNSEL; ORDER SUA SPONTE DESIGNATING LEAD PLAINTIFFS; ORDER SUA SPONTE DESIGNATING LEAD COUNSEL.

BAIRD, District Judge.

## I. INTRODUCTION.

Three class action lawsuits have been filed against Lockheed Martin Corporation

and six of its officers for securities fraud. Plaintiffs in two of the suits and 134 other potential class members (1) move to consolidate the actions, (2) move for the Court to appoint them lead plaintiffs, and (3) move for the Court to appoint their attorneys lead counsel.

The Court strikes *sua sponte* all moving parties from the motion to consolidate with the exception of Mohammad Yousefi, David Kane, and William Kretchmeyer, and it grants the motion. The Court denies the motion to appoint lead plaintiffs and lead counsel. After close review of the complaints, 137 class members' declarations certifying the purchase of Lockheed stock, and the resumes of three law firms that specialize in prosecuting securities fraud, the Court names *sua sponte* James Corbin and the City of Philadelphia Board of Pensions and Retirement as lead plaintiffs and the law firm of Milberg, Weiss, Bershad, Hynes & Lerach as lead counsel.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

On January 14, 1999, plaintiffs Mohammad Yousefi ("Yousefi") and David Kane ("Kane") filed this securities fraud class action on behalf of themselves and those who purchased Lockheed Martin Corporation ("Lockheed") stock between August 13, 1998 and December 23, 1998. (Yousefi Complaint, 1:2–5). Plaintiffs allege that defendant Lockheed and six of its officers made false and misleading statements concerning the prospective value of the company and its stock in association with two mergers and one take-over involving Lockheed. (Yousefi Complaint, 1:1–31:3). Yousefi and Kane further allege that the officer defendants sold their stock before publicly disclosing Lockheed's financial troubles, thereby violating insider trading laws. (Yousefi Complaint, 10:5–13:28). Plaintiffs state claims under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, as well as Rule 10b–5 under the Act. (Yousefi Complaint, 69:12–25).

On February 5, 1999, Joseph Edmonds ("Edmonds") filed a class action against Lockheed and the same six officers for the securities fraud that occurred between August 13, 1998 and December 23, 1998. Edmonds states claims under Sections 10(b) and 20(a) and Rule 10b–5. (Edmonds Complaint, 36:3–37:24). On February 11, 1999, William Kretchmeyer ("Kretchmeyer") filed a securities fraud class action, identical to the Yousefi and Edmonds actions. This suit involves the same defendants, the same allegations of fraud, and the same claims.

On March 15, 1999, Yousefi, Kane, Kretchmeyer, and 134 other potential class members, collectively identifying themselves as the "Lockheed Plaintiffs Group," filed a motion to consolidate the three suits. On that same day, the Lockheed Plaintiffs Group also filed a motion to appoint its 137 members lead plaintiffs in the class action. On March 29, 1999, defendants filed a notice of non-opposition to the motion to consolidate. On April 1, 1999, the Lockheed Plaintiffs Group filed a reply. No other potential class members filed motions for appointment as lead plaintiff or otherwise opposed the Lockheed Plaintiffs Group's motions.

## III. MOTION TO CONSOLIDATE.

### A. LEGAL STANDARD.

Rule 42(a) of the Federal Rules of Civil Procedure governs motions to consolidate actions. *See* Fed.R.Civ.P. 42(a).

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). The threshold issue, therefore, is whether the actions involve common facts or legal issues. *See Enter-*

*prise Bank v. Saettele,* 21 F.3d 233, 235 (8th Cir.1994).

When the suits subject to consolidation involve securities fraud, "a court shall not make the [lead plaintiff and counsel determination] until after the decision on the motion to consolidate is rendered." *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii) (1997). After the court decides the motion to consolidate, "the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions" as soon as practicable. *See* 15 U.S.C. § 78u–4(a)(3)(B)(ii).

## B. APPLICATION.

The Lockheed Plaintiffs Group moves to consolidate the Yousefi, Edmonds, and Kretchmeyer suits. (Motion to Consolidate, Face Page). This group consists of Yousefi, Kane, Kretchmeyer, and 134 class members that purchased Lockheed stock during the period at issue. (Baron Decl., Exhs. A, B). Aside from Yousefi, Kane, and Kretchmeyer, the group's members are not named plaintiffs in any of the suits.

█ Only a party to an action may move for consolidation of its action with another; alternatively, a district court presiding over the matters may order consolidation *sua sponte. See In re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1012–21 (5th Cir.1977) (explaining who may assert a motion to consolidate). Given this rule, Yousefi, Kane, and Kretchmeyer may move for consolidation because they are parties to the suits at issue. However, the 134 other members of the Lockheed Plaintiffs Group, which are not party to the three suits subject to consolidation, cannot move to consolidate the actions. Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, the Court strikes *sua sponte* the 134 members of the Lockheed Plaintiffs Group that are not party to the three actions at issue from the motion to consolidate. *See* Fed.R.Civ.P. 12(f) (permitting courts to strike "immaterial" pleadings).

█ With regard to Rule 42(a)'s requirements, the Yousefi, Edmonds, and Krechmeyer suits all state claims for violations of Sections 10(b) and 20(a) and Rule 10b–5 for false and misleading statements that defendants made relating to Lockheed stock between August 13, 1998 and December 23, 1998. (Yousefi Complaint, 69:12–25; Edmonds Complaint, 36:3–37:24; Kretchmeyer Complaint, 69:12–25). They also allege that the individual defendants sold their stock before making public disclosures concerning Lockheed's finances. (Yousefi Complaint, 10:5–13:28; Edmonds Complaint, 6:25–8:15; Kretchmeyer Complaint, 10:4–13:28). The Yousefi and Kretchmeyer complaints are written by the same counsel and are identical in form and content. The Edmonds complaint is written by counsel different from that of the Yousefi and Kretchmeyer actions, but it paraphrases those complaints almost paragraph by paragraph. Because the Court finds that the complaints contain common issues of law and fact, it grants the motion to consolidate CV 99–372 LGB (RNBx), CV 99–1266 LGB (RNBx), and CV 99–1476 LGB (RNBx).

## IV. MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL.

The 137 members of the Lockheed Plaintiffs Group move for the Court to name them joint lead plaintiffs. They also move for the law firm of Milberg, Weiss, Bershad, Hynes & Lerach ("Milberg, Weiss"), the law firm of Schiffrin & Barroway, and the law firm of Berger & Montague to serve as joint lead counsel for the instant class action suit.

### A. The Private Securities Litigation Reform Act of 1995.

█ In 1995, Congress passed the Private Securities Litigation Reform Act, which established procedures for the filing of class action suits under the Securities and Exchange Act of 1934. *See* 15 U.S.C. § 78u–4 (codifying the Act); S.Rep. No.

104–98, at 8–12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687–91. According to the Act's legislative history, Congress views the plaintiff's bar as quick to file non-meritorious securities fraud suits on behalf of nominally interested plaintiffs anytime there is a downward turn in a stock's value, hoping to extract a speedy settlement. *See* S.Rep. No. 104–98, at 8–12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687–91. To end these abuses, the Act permits district courts to appoint the plaintiff it perceives to be the most qualified to represent the class, rather than the first plaintiff to file suit. *See* 15 U.S.C. § 78u–4. Ideally, courts will appoint institutional investors with large holdings in the stock as lead plaintiff. As Congress and academics have noted, institutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees. *See* S.Rep. No. 104–98, at 6, 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685, 690 ("Numerous studies show that investors recover only 7 to 14 cents for every dollar lost as a result of securities fraud."); Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan.L.Rev. 511, 513 (1991) (noting that in one business sector, every company that suffered a market loss of twenty million dollars or more faced a securities fraud suit); Elliot J. Weiss & John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J.2053, 2109–27 (1995) ("[A] court might well feel confident in assuming that a fee arrangement an institutional investor had negotiated with its lawyers before initiating a class action maximized those lawyers' incentives to represent diligently the class' interests, reflected the deal a fully informed client would negotiate, and thus presumptively was reasonable.").

To effect these ends, the Act sets forth two steps in the lead plaintiff appointment procedure. First, the plaintiff who filed the complaint shall publish, in a widely circulated national business-oriented publication or wire service, a notice advising members of the proposed class that the action is pending and that any member of the class may move the court to serve as lead plaintiff within sixty days of the notice's publication. *See* 15 U.S.C. § 78u–4(a)(3)(A). Plaintiff must publish this notice within twenty days of filing the complaint. *See* 15 U.S.C. § 78u–4(a)(3)(A)(i). If more than one action on behalf of a class asserting substantially the same claim is filed, the Act only requires the plaintiff in the first-filed action to publish the notice. *See* 15 U.S.C. § 78u–4(a)(3)(A)(ii). Second, the district court shall consider any motion made by a purported class member in response to the notice and shall appoint as lead plaintiff the member or members of the purported class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. § 78u–4(a)(3)(B).

The Act also creates a rebuttable presumption concerning which party is most capable of adequately representing the interests of class members. The court shall apply the rebuttable presumption to the person that, (1) "has either filed the complaint or made a motion in response to a notice" of the action, (2) "has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

## B. COMPLIANCE WITH THE ACT'S NOTICE REQUIREMENTS.

Yousefi and Kane, who filed the first action, have complied with the Act's

notice requirements. *See* 15 U.S.C. § 78u–4(a)(3)(B) (requiring that the first-filed action meet notice requirements). On January 14, 1999, the day on which they filed suit, Yousefi and Kane announced on the Dow Jones & Company's *Business Wire* their class action suit against Lockheed and its officers, filed in the Central District of California. (Baron Decl., Exh. D). The wire details the securities fraud allegations against Lockheed and its officers for the period of August 13, 1998 to December 23, 1998. (Baron Decl., Exh. D). As required by the Act, the announcement also states that "[i]f you are a member of the Class described above, you may, no later than 60 days from today, move the Court to serve as lead plaintiff of the Class, if you so choose." (Baron Decl., Exh. D). Class members had until March 15, 1999 to move this Court to appoint them lead plaintiffs. No class members filed such a motion other than the instant motion.

Since the passage of the Act, district courts, including this Court, have repeatedly recognized the *Business Wire* as a "widely circulated national business-oriented ... wire service," as required by the Act. *See, e.g., Squyres v. Union Texas Petroleum Holdings, Inc.,* 1999 Fed.Sec. L.Rep. (CCH) ¶ 90,405 (C.D.Cal. November 2, 1998) (Baird, J.); *Chill v. Green Tree Fin. Corp.,* 181 F.R.D. 398, 403 (D.Minn.1998); *D'Hondt v. Digi Int'l, Inc.,* 1997 WL 405668, at *1 (D.Minn. Apr.3, 1997); *Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 62–63 (D.Mass.1996) ("*Business Wire* is subscribed to by hundreds of print publications and wire services, encompassing news media in all fifty states."). Accordingly, the Court finds that Yousefi and Kane have met the Act's notice requirements.

## C. GROUPING UNRELATED CLASS MEMBERS TO ESTABLISH THE REBUTTABLE PRESUMPTION.

Courts applying the Act are divided over whether multiple class members may aggregate their losses in order to satisfy the presumption's requirement that the lead plaintiff be the "person or group of persons [that] has the largest financial interest in relief sought by the class." *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii). The Southern District of New York, in *In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156 (S.D.N.Y.1997), denied plaintiffs' motion to aggregate two institutional investors and four individuals to serve as lead plaintiffs. *See id.* at 157. The court reasoned that by grouping the interests of unrelated class members, those members would most likely abdicate the coordination of the suit to their attorneys. *See id.* The court expressed that this result would be at odds with the Act's purpose of eliminating lawyer-driven litigation. *See id.*

However, the majority of courts addressing this issue have permitted the aggregation of claims. *See, e.g., In re Advanced Tissue Sciences Sec. Litig.,* 184 F.R.D. 346, 353 (S.D.Cal.1998) (allowing the aggregation of six plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45–48 (appointing three plaintiffs as lead plaintiffs); *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 409 (D.Minn.1998) (aggregating six plaintiffs). Courts have arrived at this result because the Act expressly permits a court to appoint more than one lead plaintiff. The court "shall appoint as lead plaintiff the member or *members* of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i) (emphasis added). Furthermore, when choosing the lead plaintiff, the court must appoint the "person or *group of persons*" that meets the rebuttable presumption's requirements. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) (emphasis added). Therefore, the Act clearly contemplates the appointment of multiple plaintiffs to manage the litigation.

Nevertheless, the Court recognizes a tension between the Act's express

purpose and language. Although the legislative history stresses the need to place control of securities class actions in a small and finite number of plaintiffs, the statute's language explicitly provides for more than one lead plaintiff, altogether failing to limit the number of lead plaintiffs a court may employ. *See* 15 U.S.C. § 78u–4(a)(3)(B); *See* S.Rep. No. 104–98, at 8–12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 685. This tension's import is that Congress desired the Act to mitigate abusive litigation tactics, in contrast to serving as an antidotal measure. Examining the Act through this palliative lense, the Court finds that it contemplates the aggregation of unrelated plaintiffs as a permissible, albeit suboptimal, result. Contrary to the holding in *In re Donnkenny Inc. Securities Litigation,* this Court therefore holds that where a group of unrelated plaintiffs move to aggregate their claims to serve as lead plaintiffs, and no party or potential class member opposes the motion, the court may permit the aggregation. In sum, the Court finds that the Act does not prohibit outright the Lockheed Plaintiffs Group from collectively moving for appointment as joint lead plaintiffs.

The tension between the Act's legislative history and express language also counsels this Court's decision concerning the appropriate number of class members to serve as lead plaintiffs. As explained above, the Lockheed Plaintiffs Group consists of three named plaintiffs and 134 unrelated class members. Precedent does not exist for a group of lead plaintiffs this large. In fact, when courts appoint multiple class members as lead plaintiffs, they typically appoint less than ten plaintiffs. *See, e.g., See In re Advanced Tissue Sciences Sec. Litig.,* 184 F.R.D. 346, 353 (S.D.Cal.1998) (allowing the aggregation of six plaintiffs); *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 45–48 (appointing three plaintiffs as lead plaintiffs); *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398, 409 (D.Minn.1998) (aggregating six plaintiffs). Confronted with a similar issue, the Southern District of California, in *In re Ad-* *vanced Tissue Sciences Securities Litigation,* 184 F.R.D. 346 (S.D.Cal.1998), denied a motion to appoint approximately 250 unrelated class members as lead plaintiffs and denied another motion to appoint 165 unrelated class members. The Court reasoned that numerous lead plaintiffs would make "the administration of this action unnecessarily complex and unwieldy" and would be "inconsistent with the goal of restoring control over lawsuits to plaintiffs." *Id.* at 352. Instead, the court granted an alternative motion to appoint six class members as lead plaintiffs. *See id.*

 Like the Southern District of California, this Court finds that an aggregation of class members as large as the Lockheed Plaintiffs Group would frustrate the Act's purposes. One of its primary goals is to enable plaintiffs to seize control of securities fraud class action suits from the plaintiff's bar. *See* S.Rep. No. 104–98, at 8–12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 687–91. In a suit with 137 lead plaintiffs, attorneys would have to assume a leadership role to coordinate and manage this number of lead plaintiffs. In addition, as the number of lead plaintiffs increases, individual plaintiff's incentives to monitor attorney behavior decreases, causing a "free-rider" problem. As a leading article on shareholder monitoring explains,

> The monitor will continue to expend effort as long as his cost of doing so is less than his expected benefit. But when there are many potential monitors with overlapping interests, the optimal level may prove more elusive. An individual seeking to reduce his own monitoring costs may attempt to rely on the efforts of others; such "freeriding," if widespread, will lead to undermonitoring.

*See* Saul Levmore, *Monitors and Freeriders in Commercial and Corporate Settings,* 92 Yale L.J. 49, 49 (1982). In short, if the Court appoints only a few lead plaintiffs, those plaintiffs are likely to assume

more responsibility over the suit than if the court appointed hundreds of lead plaintiffs. Because the Court finds that the appointment of 137 lead plaintiffs would frustrate the Act's purposes, the Court denies the Lockheed Plaintiffs Group's motion for appointment as lead plaintiffs.

## ·D. AUTHORITY TO APPOINT LEAD PLAINTIFF.

As of the date of this order, only three published opinions have denied class members' motions for appointment as lead plaintiffs. As explained above, in *In re Donnkenny Inc. Securities Litigation,* 171 F.R.D. 156 (S.D.N.Y.1997), the district court denied a group of unrelated class members' motion to be named lead plaintiffs, reasoning that the Act does not permit the aggregation of claims. *See id.* at 157–58. Instead, the court granted an institutional investor's motion to be named lead plaintiff. *See id.* at 158. In *Chill v. Green Tree Financial Corp.,* 181 F.R.D. 398 (D.Minn.1998), the district court denied a motion to name 300 class members lead plaintiffs but granted an alternative motion to name a much smaller group of class members lead plaintiffs. *See id.* at 413–15. Similarly, in *In re Advanced Tissue Sciences Securities Litigation,* 184 F.R.D. 346 (S.D.Cal.1998), the district court denied a motion to name approximately 250 class members lead plaintiffs and denied a motion to name 165 class members lead plaintiffs. *See id.* at 352–53. Instead, the court granted an alternative motion to name six members lead plaintiffs. *See id.* at 353. In all three of these suits, the district courts denied motions to be named lead plaintiffs only to grant motions in the alternative.

■ In the instant suit, the Lockheed Plaintiffs Group's motion is the only one that has been filed. Although the law firm of Milberg, Weiss represented plaintiffs in all three of the above-mentioned suits and represents plaintiffs in this suit, the firm has not filed a motion in the alternative. Instead, the Lockheed Plaintiffs Group's

motion, signed by a Milberg, Weiss attorney, asks the Court to name the 137 class members lead plaintiffs and then allow the lead plaintiffs to designate "lead plaintiff representatives" to manage the suit. (Lead Plaintiff Motion, 2:25–28). The Lockheed Plaintiffs Group cites to a recent opinion from this District, *Schlagal v. Learning Tree Int'l,* CV 98–6384 ABC (Ex), 1999 WL 672306 (C.D.Cal. Feb. 25, 1999), where the court permitted lead plaintiffs to designate lead plaintiff representatives at the class certification stage. *See id.* at \*5–\*6. The *Schlagel* court noted that it may "leave the decision of whom to appoint as a smaller representative group to lead plaintiffs and *their counsel." Id.* at \*6 (emphasis added). Contrary to this holding, in a suit such as this one where counsel would have to manage the large Lockheed Plaintiffs Group, permitting the group and its counsel to name representative lead plaintiffs would allow counsel to name nominally interested plaintiffs as a means of seizing control of the suit. This strategy is a novel and veiled attempt to shift the Court's authority to name lead plaintiffs to counsel, effectively nullifying the aim of the Act. Therefore, the Court does not permit the Lockheed Plaintiff's Group to name representatives.

■ This presents the Court with an issue of first impression: If the Court denies a motion to name lead plaintiffs, does the Act compel it to designate a lead plaintiff, or should it wait for another class member to file a motion for the designation of lead plaintiff? The Court finds that the Act advocates the former approach. Under the Act,

> Not later than 90 days after the date on which a notice is published [announcing the filing of the suit], the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plain-

tiff the member or members of the purported plaintiff class....

15 U.S.C. § 78u–4(a)(3)(B)(i). The purpose of the notice requirement is to afford institutional investors the opportunity to intervene in these actions. If a court does not receive a response within the prescribed time frame, it must assume that these optimal plaintiffs will not intervene. The ninety day time frame, which would have applied to this suit if it were not a consolidated action, expired on April 15, 1999. Given the Act's mandatory language that the district court "shall appoint [a] lead plaintiff" either within ninety days or as soon as practicable when a motion to consolidate is pending, the Court holds that it must appoint a lead plaintiff at this juncture in the suit.

This holding is implicitly supported by *In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42 (S.D.N.Y.1998). In that suit, three sets of investors moved for the court to appoint them lead plaintiffs. *See id.* at 43–46. Finding that all three sets of plaintiffs were qualified to represent the class, the Court appointed all three sets of class members joint lead plaintiffs, with each exercising a single vote. *See id.* Therefore, the court did not grant the letter of class members' motions but instead modified them *sua sponte* in order to progress with the suit.

## E. APPOINTMENT OF LEAD PLAINTIFF.

■ When determining which class member to appoint lead plaintiff, a court should consider the rebuttable presumption factors enumerated in the Act, even when the motion is unopposed. These factors are:

(1) whether the class member filed the complaint or the motion for lead plaintiff;

(2) in the court's determination, whether the class member has the largest financial interest in the relief sought by the class; and

(3) whether the class member otherwise satisfied the requirements of Rule 23.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). Courts have also taken the following factors into consideration to determine which class member to appoint lead plaintiff.

(1) whether the class member is an institutional investor. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 47 (S.D.N.Y.1998).

(2) whether there is evidence that the class member will serve as an efficient monitor of its attorneys. *See id.* at 46.

(3) whether the class member uniquely represents class interests. *See id.* at 47.

Each of the 137 members of the Lockheed Plaintiffs Group filed a "Certification of Named Plaintiff," which states that the member wants to serve as lead plaintiff, the dates the member traded Lockheed stock, the number of shares the member purchased, and the price the member paid per share. (Baron Decl., Exh. A). The Lockheed Plaintiffs Group also presents a statement of loss for each member of the group. (Baron Decl., Exh. B). This loss ranges from $24.99 to $155,765.89. The largest investor is James Corbin ("Corbin"), who alleges a loss of $155,765.89. (Baron Decl., Exh. B). The second largest investor is the City of Philadelphia Board of Pensions and Retirement ("City of Philadelphia"), which alleges a loss of $130,137.50. (Baron Decl., Exh. B).

■ The Court finds that Corbin and the City of Philadelphia would best serve as lead plaintiffs. Both Corbin and the City of Philadelphia meet the rebuttable presumption's first requirement because they both filed the instant motion and signed certifications declaring that they are willing to serve as lead plaintiffs. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). (Baron Decl., Exh. A). Furthermore, Corbin and the City of Philadelphia possess the largest financial interests in the Lockheed stock of all the movants, thereby meeting the rebuttable presumption's second requirement. *See* 15 U.S.C. § 78u–

4(a)(3)(B)(iii)(I). (Baron Decl., Exh. A). The Court also finds that with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone. *See In re Oxford Health Plans,* 182 F.R.D. at 47 (appointing a group of individual investors and institutional investors to serve as joint lead plaintiffs because they would represent a broad range of interests).

 The Court also finds that Corbin and the City of Philadelphia meet Section 78u–4's Rule 23 requirements. At this stage of the proceeding, proposed lead plaintiffs need only make a *preliminary* showing that they satisfy the requirements of Rule 23. *See Gluck v. Cellstar Corp.,* 976 F.Supp. 542, 546 (N.D.Tex.1997) (noting that Congress did not require an exhaustive Rule 23 showing). Because the lead plaintiffs will state claims identical to those in the consolidated action arising out of alleged misstatements made between August 13, 1998 and December 23, 1998, their claims arise from the same "course of conduct" that gives rise to the claims of the other class members, thereby meeting the commonality and typicality requirements. *See In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.,* 122 F.R.D. 251, 254–56 (C.D.Cal.1988). Next, a class of at least 137 members makes joinder of all members impracticable, thereby meeting the numerosity requirement. *See General Tel. Co. v. Equal Employment Opportunity Comm'n,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Finally, no evidence exists to suggest that Corbin and the City of Philadelphia are antagonistic to other members of the class or their attorneys, thereby meeting the adequacy of representation requirement. *See Diana Doe v. Los Angeles Unified School Dist.,* 48 F.Supp.2d 1233 (C.D.Cal.1999). For these reasons, the Court is satisfied that Corbin and the City of Philadelphia meet Rule 23's requirements. However, because Section 78u–4 only requires preliminary class certification findings, the Court does not preclude any party from contesting the ultimate class certification on the basis of the instant findings. *See Gluck,* 976 F.Supp. at 546.

Incidentally, the Court recognizes that none of the class members moving to serve as lead plaintiff possess enough of a financial stake to ensure careful and prolonged monitoring of this suit. The service list in this suit names ten corporate law firms, suggesting that legal fees in this matter are compounding quickly. Even Corbin's and the City of Philadelphia's financial stakes are not weighty enough for them to expend large amounts of time and resources supervising this suit. *See In re Oxford Health Plans,* 182 F.R.D. at 47 (appointing investors with tens of millions of dollars at stake as lead plaintiffs). To minimize the free-rider problem, the Court nevertheless believes that Corbin and the City of Philadelphia may each exert more control over their attorneys by serving as one of two lead plaintiffs, in contrast to serving as one of 137 lead plaintiffs.

Accordingly, the Court appoints Corbin and the City of Philadelphia as lead plaintiffs in this suit. Each shall exercise an equal vote in managing this litigation. *See id.* at 45 (charging each lead plaintiff with an equal vote to facilitate decision-making).

**F. APPOINTMENT OF LEAD COUNSEL.**

Corbin and the City of Philadelphia, like the other 135 members of the Lockheed Plaintiffs Group, move to appoint three law firms to serve as lead counsel: (1) Milberg, Weiss; (2) Schiffrin & Barroway; and (3) Berger & Montague. As to the appointment of lead counsel requirements, the Act states only that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). Nevertheless, the Act's leg-

islative history reveals that Congress wanted to vest district courts with the authority to appoint lead counsel to prevent attorneys from racing to the courthouse to be "the first to file." *See* S.Rep. No. 104–98, at 4–12 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683–91. Here, Corbin and the City of Philadelphia move to have the same three law firms serve as lead counsel, thereby eliminating potential abuses from attorneys trying to "file first."

 Nonetheless, the Court finds that the Act would be better served by the appointment of one law firm to manage the case. As explained above, one of the central purposes of the Act is to enable plaintiffs to control counsel. *See* S.Rep. No. 104–98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690. If the Court appointed three law firms as lead counsel, Corbin and the City of Philadelphia would have to exert their authority in triplicate every time they made a decision. The Court finds that Corbin and the City of Philadelphia are more likely to develop a strong attorney-client relationship if they only have to deal with one central law firm, as opposed to three. Accordingly, the Court will only permit one law firm to serve as lead counsel in this case on the basis that class interests are better served by a central law firm.

 Upon review of the three firms' resumes, the Court finds that they all have broad experience and success in prosecuting securities fraud class actions. In differentiating between the three firms, the Court finds that Milberg, Weiss' attorneys have signed all the pleadings in the Yousefi and Ketchmeyer actions up to this point in the litigation, thereby displaying a strong familiarity with the facts of this suit. On this basis, the Court finds that Milberg, Weiss is the most capable of serving as lead counsel. *See Squyres v. Union Texas Petroleum Holdings, Inc.*, 1999 Fed. Sec.L.Rep. (CCH) ¶ 90,405 (C.D.Cal. November 2, 1998) (Baird, J.) (finding Milberg, Weiss qualified to serve as lead counsel); *In re Advanced Tissue Sciences*

*Sec. Litig.*, 184 F.R.D. 346, 352 (S.D.Cal. 1998) (same); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 403, 413–15 (D.Minn.1998) (same); *In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y.1997) (same). Accordingly, the Court denies the Lockheed Plaintiffs Group's motion for appointment of lead counsel, but it names Milberg, Weiss as lead counsel.

## V. CONCLUSION.

The Court strikes *sua sponte* all moving parties from the motion to consolidate with the exception of Mohammad Yousefi, David Kane, and William Kretchmeyer, and it grants the motion. The caption in this matter shall be:

IN RE LOCKHEED MARTIN CORP. SECURITIES LITIGATION.

CV 99–372 LGB (RNBx) CLASS ACTION

Consolidated with:

CV 99–1266 LGB (RNBx)

CV 99–1476 LGB (RNBx)

The lead plaintiffs shall file a *concise* consolidated amended complaint within forty-five days after receiving this order.

The Court denies the motion to appoint lead plaintiff and lead counsel. The Court names James Corbin and the City of Philadelphia Board of Pensions and Retirement lead plaintiffs and the law firm of Milberg, Weiss, Bershad, Hynes & Lerach as lead counsel.

**IT IS SO ORDERED.**