**In re E.SPIRE COMMUNICATIONS, INC., Securities Litigation.**

**No. H–00–1140.**

United States District Court, D. Maryland.

Aug. 15, 2000.

---

**34.** *Univ. of Pa.,* 493 U.S. at 189, 110 S.Ct. 577.

Robert A. Rohrbaugh, Rockville, Maryland, Robert I. Harwood, Frederick W. Gerkens, III, and Matthew M. Houston of Wechsler Harwood Halebian and Feffer LLP, New York, New York, Jeffrey Block of Berman, Devalerio & Pease LLP, Boston, Massachusetts, and Joshua G. Gerstin, Boca Raton, Florida, for plaintiff Mitchell Kranes.

Robert A. Rohrbaugh, Rockville, Maryland, for consolidated plaintiffs Pat Edward Pirraglia, Vincent Matassa, Douglas Schiesswohl, Richard La Greca and Richard S. Ingardia.

Charles J. Piven of Law Offices of Charles J. Piven PA, Baltimore, Maryland, and Fred Taylor Isquith of Wolf, Haldenstein, Adler, Freeman and Herz, New York, New York, for Charles P. Daniels.

Charles J. Piven of Law Offices of Charles J. Piven PA, Baltimore, Maryland, and Jeffrey Block of Berman, DeValerio & Pease LLP, Boston, Massachusetts, for consolidated plaintiffs Philip Z. Andrews and Gary Kulak.

Charles J. Piven of Law Offices of Charles J. Piven PA, Baltimore, Maryland, for consolidated plaintiff Chaim Klein.

Robert A. Rohrbaugh, Rockville, Maryland, and Joseph H. Weiss, New York, New York, for consolidated plaintiffs Ezreil Tauber, Frederic M. Hesser and Stephen Hesser.

Fred Taylor Isquith of Wolf, Haldenstein, Adler, Freeman and Herz, New York, New York, and Burton Finkelstein and Donald J. Enright of Finkelstein, Thompson & Loughran, Washington, D.C., for consolidated plaintiff Market Street Securities, Inc.

Andrew Marc Herscowitz and John B. Missing of Brobeck Phleger & Harrison, LLP, Washington, D.C., Ronit Setton, New York, New York, Brian D. Roche, Chicago, Illinois, and Randi B. Guest, New York, New York, for defendant Anthony J. Pompliano.

Andrew Marc Herscowitz and John B. Missing of Brobeck Phleger & Harrison, LLP, Washington, D.C., Ronit Setton, New York, New York, and Randi B. Guest, New York, New York, for defendants David L. Piazza, Douglas R. Hudson and E.Spire Communications, Inc.

John B. Isbister of Tydings and Rosenberg, Baltimore, Maryland, and Robert B. Weiser, Bala Cynwyd, Pennsylvania, for movants Patricia Tawfick and Jack Tawfik.

Charles J. Piven of Law Offices of Charles J. Piven PA, Baltimore, Maryland, for movant Thomas Gleason.

Joseph De Simone, New York, New York, Richard Spehr, New York, New York, and Ryan Farley, New York, New York, for defendants ING Equity Partners LPI, Benjamin P. Giess and Oliver L. Trouveroy.

## MEMORANDUM OPINION

HARVEY, District Judge.

Pending in this Court are 10 putative class action suits asserting securities fraud claims against E.Spire Communications, Inc. ("E.Spire") and certain of its officers and/or directors. Suit has been brought on behalf of shareholders of E.Spire who are seeking damages for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78t(a) and 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Jurisdiction is alleged to exist pursuant to 28

U.S.C. § 1331. An Order has recently been entered by the Court consolidating these actions for all purposes pursuant to Rule 42(a), F.R.Civ.P.

Currently before the Court at this early stage of these proceedings are three separate motions for the appointment of a lead plaintiff or lead plaintiffs and for the approval of the selection of lead counsel, pursuant to § 21D(a)(3) of the Exchange Act, as amended, 15 U.S.C. § 78u–4(a)(3). One motion has been filed by class member Thomas Gleason both on his own behalf and on behalf of his wife, Anna Powers (referred to collectively as "Gleason"). A second motion has been filed by five class members, namely, Vincent Matassa, Douglas Schiesswohl. Chaim Klien, Richard La Greca and Richard Ingardia (referred to collectively as the "Matassa Group"). A third motion has been filed by two class members, namely, Jack Tawfik and his wife Patricia Tawfik (referred to collectively as the "Tawfik Movants"). Memoranda and exhibits in support of and in opposition to the motions have been filed. A hearing on the motions has been held in open court. For the reasons stated herein, this Court will grant Gleason's motion, will deny the Matassa Group's motion, and will deny the Tawfik Movants' motion.

## I

### Procedural History

On April 19, 2000, plaintiff Mitchell Kranes filed the first of these ten securities fraud class action suits in this Court against E.Spire and certain of its officers and directors (collectively the "defendants"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b–5. These suits were brought on behalf of individuals purchasing E.Spire stock between August 12, 1999 and March 30, 2000 (the "Class Period").

Pursuant to 15 U.S.C. § 78u–4(a)(3)(A)(i), notices that these class actions had been initiated against the defendants were published over widely circulated national business oriented wire services, advising members of the proposed class of their right to move this Court to serve as lead plaintiff no later than 60 days from April 19, 2000. Three separate motions for the appointment of lead plaintiff or lead plaintiffs have now been filed. The first of these motions was filed by Gleason,[1] the second by the Matassa Group, and the third by the Tawfik Movants. On August 8, 2000, this Court consolidated the ten pending class actions which now comprise one consolidated class action.[2]

## II

### Background Facts

E.Spire is a Delaware Corporation whose principal place of business during most of the Class Period was Annapolis, Maryland. On February 24, 2000, E.Spire moved its headquarters to Virginia. E.Spire is a facilities-based integrated communications provider to businesses in thirty-five markets around the United States.

Plaintiffs have alleged that during the Class Period, the defendants engaged in a scheme and course of conduct to defraud or deceive investors by utilizing improper accounting methods to overstate E.Spire's earnings for the fiscal year 1999. It is alleged that E.Spire's actual earnings were substantially overstated, causing plaintiffs and other class members to purchase E.Spire common stock at artificially inflated prices. During the Class Period, Gleason and his wife purchased 98,500 shares of E.Spire stock, members of the Matassa Group purchased an aggregate number of 63,800 shares of E.Spire stock, and the Tawfik Movants purchased 55,000 shares of E.Spire stock.

On March 30, 2000, E.Spire announced that it was reducing its stated 1999 revenues

---

1. Although Thomas Gleason and his wife Anna Powers both purchased E.Spire stock during the Class Period, Thomas Gleason controls Anna Powers' account, and, under such circumstances, only Thomas Gleason has moved to be appointed lead plaintiff.

2. The civil action numbers of the ten class actions are as follows: Civil Nos. H–00–1140, H–00–1169, H–00–1212, H–00–1371, H–00–1373, H–00–1420, H–00–1421, H–00–1556, H–00–1833, and H–00–1924. The cases have been consolidated as Civil No. H–00–1140.

by \$12,300,000 "to comply with prevailing accounting principles." E.Spire also announced at that time that it was not in compliance with certain debt covenants. Following these announcements, E.Spire's stock dropped by thirty-eight percent over a two-day period. As the result of defendants' actions, Gleason has alleged that he and his wife suffered losses amounting to \$401,700, the Matassa Group has alleged aggregate losses of \$520,704,[3] and the Tawfik Movants have alleged losses of \$270,376.

## III

### Applicable Principles of Law

In 1995, Congress enacted the Private Securities Litigation Reform Act (the "PSLRA"), the purpose of which was to remedy perceived abuses in securities class action litigation. *In re Milestone Scientific Secs. Litig.*, 183 F.R.D. 404, 411 (D.N.J.1998) (citations omitted). Among other things, Congress was concerned that the lead plaintiff in class action lawsuits was being determined by a race to the courthouse undertaken by plaintiffs' lawyers. See S.Rep. No. 104–98 (1995), reprinted in 1996 U.S.C.C.A.N. at 679. In enacting the PSLRA, Congress intended to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection of counsel." See H.R.Rep. No. 104–369, at 32 (1995), reprinted in 1996 U.S.C.C.A.N. at 731.

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported class that the court determines to be most capable of adequately representing the interests of the class." See 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA creates a "rebuttable presumption ... that the most adequate plaintiff ... is the person or group of persons that—(aa) has either filed the complaint or made a motion in response to a notice ...; (bb) in the determination of the

court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

It appears that courts applying the PSLRA are divided over whether multiple class members may aggregate their losses in order to satisfy the statutory requirement that the lead plaintiff be "the person or group of persons ... [with] the largest financial interest in the relief sought by the class." Compare *In re Donnkenny, Inc. Secs. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y.1997) (concluding that the single plaintiff with the largest financial interest in the action should be appointed lead plaintiff) with *In re Advanced Tissue Sciences Sec. Litig.*, 184 F.R.D. 346, 353 (S.D.Cal.1998) (allowing the aggregation of six plaintiffs) and *In re Oxford Health Plans, Inc. Secs. Litig.*, 182 F.R.D. 42, 45–48 (S.D.N.Y.1998) (appointing three plaintiffs as lead plaintiffs). Courts permitting the aggregation of claims by multiple plaintiffs have done so because the PSLRA allows a court to appoint more than one lead plaintiff. In pertinent part, the PSLRA states that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing" the class. See 15 U.S.C. § 78u–4(a)(3)(B)(i). Moreover, when choosing the lead plaintiff, the court should appoint the "person or group of persons" that meets the rebuttable presumption requirements. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). It is thus apparent that the PSLRA permits but does not require the appointment of multiple plaintiffs to manage PSLRA litigation. Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49. A "rule of reason" should prevail. *Chill*

---

3. Although the Matassa Group did not specify the losses suffered by each of its members individually, it did note that Vincent Matassa suffered the greatest loss, estimated at \$ 152,382, and that Richard Ingardia suffered the smallest loss, esti-

mated at \$ 69,608. The Matassa Group has further indicated that each of the five individuals comprising the Matassa Group lost an average of \$ 104,141.

*v. Green Tree Financial Corp.,* 181 F.R.D. 398, 409 (D.Minn.1998); *In re Milestone Scientific Sec. Litig.,* 183 F.R.D. at 417.

Some courts have recognized the inherent tension between the PSLRA's express purpose of preventing lawyer-driven securities litigation and the express language of the statute. In *Yousefi v. Lockheed Martin,* 70 F.Supp.2d 1061 (C.D.Cal.1999), the court discussed this very issue, stating:

> Although the legislative history [of the PSLRA] stresses the need to place control of securities class actions in a small and finite number of plaintiffs, the statute's language explicitly provides for more than one lead plaintiff, altogether failing to limit the number of lead plaintiffs a court may employ ... This tension's import is that Congress desired the Act to mitigate abusive litigation tactics, in contrast to serving as an antidotal measure. Examining the Act through this palliative lense, the Court finds that it contemplates the aggregation of unrelated plaintiffs as a permissible, albeit suboptimal, result. (Emphasis added).

*Id.* at 1068 (citations omitted).

Similarly, in *In re Telxon Corp. Secs. Litig.,* 67 F.Supp.2d 803 (N.D.Ohio 1999), the court stated:

> This Court agrees that the context and structure of the PSLRA evince an intent that a "group" [of persons] consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorneys. The PSLRA does allow more than one person to serve as lead plaintiff; it would be inconsistent with the PSLRA's facial disapproval of multiple plaintiffs, and its persistent use of the singular terms person and plaintiff, however, to allow a melange of unrelated persons to serve as the lead plaintiff ... (Emphasis in original).

*Id.* at 813.

In *Sakhrani v. Brightpoint, Inc.,* 78 F.Supp.2d 845, 846 (S.D.Ind.1999), the Court noted that "where the members of the group do not share business or other relationships independent of the lawsuit, however, this court concludes that appointment of such an artificial group of persons as lead plaintiffs should be rare under the PSLRA."

The PSLRA also provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." See 15 U.S.C. § 78u–4(a)(3)(B)(v).

## IV

### Discussion

■ The Matassa Group contends that it satisfies all the requirements of the PSLRA with regard to the Court's selection of a lead plaintiff or lead plaintiffs and that the members of its group are the best candidates to serve as lead plaintiffs. Noting that it has the largest aggregate financial stake in the case of all the parties seeking appointment as lead plaintiff, the Matassa Group claims that its members are precisely the sort of lead plaintiffs envisioned by the PSLRA, namely a small and manageable group of financially motivated investors who will vigorously prosecute the pending actions against the defendants. According to the Matassa Group, the PSLRA expressly allows for the aggregation of the amount of losses suffered by individual investors and that, as a result of such aggregation, the Matassa Group possesses a larger financial interest in the relief being sought than the other two competing groups seeking appointment as lead plaintiff.

The Tawfik Movants in turn argue that they satisfy all the requirements of the PSLRA with regard to the selection of lead plaintiffs and that they are best suited to serve in this capacity. They object to the Court's selection of the Matassa Group, noting that the size of that group's financial stake is solely the result of an artificial grouping of unrelated investors by attorneys for the sole purpose of being appointed lead counsel. According to the Tawfik Movants, such a grouping is in direct contravention to the intention of Congress in enacting the PSLRA.

Gleason maintains that he should be selected as the most adequate lead plaintiff. He

notes that he has the largest financial interest of any single investor in the relief sought by the class, having suffered losses of $401,700. Gleason contends that he should be found to be the more adequate lead plaintiff over the Tawfik Movants since they suffered losses of only $270,376. According to Gleason, the Matassa Group consists of five unrelated investors who were randomly brought together through the actions of two different law firms. Gleason argues that such an aggregation is contrary to the intent of Congress in passing the PSLRA which sought to curb the proliferation of lawyer-driven securities fraud litigation. As a single investor with the largest financial stake, Gleason argues that he should be preferred over the Matassa Group.

Applying the principles of the PSLRA and the many pertinent decisions construing it, this Court has concluded that the Gleason motion should be granted and that the motions of the Matassa Group and the Tawfik Movants should be denied. The circumstances here are quite different from those present in many cases cited by the parties. Here, only individual investors are involved. Counsel for the Matassa Group argue that the overwhelming majority of courts addressing the issue have appointed groups of lead plaintiffs in securities fraud actions. The Court would note that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors. *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 548 (N.D.Tex.1997). Most of the cases relied upon by the Matassa Group involve the appointment of multiple lead plaintiffs in which one or more of the group selected was an institutional investor. See e.g., *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 45; *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. at 406; *Zaltman v. Manugistics Group, Inc.*, 1998 U.S. Dist. LEXIS 22867 at *18. Since only individual investors are involved in this consolidated case, the determinations made in those cases are inapposite.

The primary issue presented by the pending motions concerns the statutory presumption that the most adequate plaintiff is the "person or group of persons that…has the largest financial interest in the relief sought." § 78u–4(a)(3)(B)(iii)(I). Clearly, the Tawfik Movants are not the most adequate plaintiffs because they do not possess the largest financial interest in the relief sought. The Tawfik Movants, who are husband and wife investors in E.Spire, have alleged losses of $ 270,376. Gleason has alleged losses of $ 401,700. Whether or not the Matassa Group is deemed by this Court to possess the largest financial interest in this action because their aggregate losses amount to $ 520,704, it is clear that Gleason, as a single investor, must be presumed more adequate than the Tawfik Movants, since Gleason's losses were greater than those of the Tawfik Movants. Accordingly, this Court's choice as to lead plaintiff must essentially be made between Gleason and the Matassa Group.

As previously noted, the PSLRA was enacted by Congress to remedy certain perceived abuses in securities class action litigation. *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. at 411. Specifically, Congress sought by enacting the PSLRA to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection of counsel." See H.R.Rep. No. 104–369, at 32, U.S.Code Cong. & Admin.News 1995, pp. 679, 711. To this end, Congress included in the PSLRA the provision creating the rebuttable presumption that the person or groups of persons with the largest financial interests in the relief sought by the class would be the most adequate lead plaintiff.

By its inclusion of the phrase "group of persons," it is apparent that Congress did not intend to preclude multiple plaintiffs in securities class actions from aggregating their losses to satisfy the "largest financial interest" prong of the PSLRA presumption concerning the most adequate lead plaintiff. *In re Advanced Tissue Sciences*, 184 F.R.D. at 353; *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 45–48.

Nevertheless, by allowing any group of plaintiffs to aggregate their losses to satisfy the "largest financial interest" prong of the presumption, a court runs the risk that attor-

neys will seek to put together a group of unrelated plaintiffs for the sole purpose of having that group qualify as the group with the "largest financial interest," in turn leading to such attorneys' appointment as lead counsel. Recognizing this risk and its inconsistency with the PSLRA, courts have held that both the context and the structure of the PSLRA demonstrate that a "group of persons," within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys. *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d at 813; see also *Sakhrani*, 78 F.Supp.2d at 846.

With these principles in mind, this Court will appoint Gleason as lead plaintiff, even though the Matassa Group's aggregate losses of $520,704 surpass those of Gleason. The Matassa Group was formed when one set of unrelated plaintiffs who were represented by the law firm of Finkelstein, Thompson & Lougham decided to aggregate their losses with another set of unrelated plaintiffs represented by the law firm of Wechsler Harwood Halebian & Feffer, LLP. Other than the fact that all five individual investors have suffered losses and have signed retainer agreements with the aforementioned law firms, the record here does not indicate that the members of the Matassa Group share any business or other relationships independent of this lawsuit.

This Court concludes that the Matassa Group is the precise type of group whose appointment as lead plaintiffs "should be rare." *Sakhrani*, 78 F.Supp.2d at 846. As formed, the Matassa Group is an artificial one, and it has not been shown that the members share business or other relationships. Had the Matassa Group been able to show that its members had a relationship with each other based upon factors independent of this class action, there would then be more support for their argument that they should be presumed to be the most adequate lead plaintiff. However, they have failed to show that they are a "cohesive group," foreclosing their appointment as the most adequate lead plaintiffs. *In re Milestone Scientific Sec. Lit.*, 183 F.R.D. at 417.

In this action, Gleason, an individual investor represented by a single law firm, has asked to be appointed lead plaintiff. He satisfies all the statutory requisites for such appointment, having suffered substantial losses. The fact that Gleason alone has suffered over $400,000 in losses, $250,000 more than the losses claimed by any one individual investor in the Matassa Group, ensures that he will vigorously prosecute this consolidated action against defendants. Furthermore, Gleason's interests in this action are likely to be similar to those of the other class members because, as Congress has noted, "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, [are more likely to] participate in the litigation and [to] exercise control over counsel." See H.R.Rep. No. 104–369, at 32, U.S.Code Cong. & Admin.News 1995, pp. 679, 711.

While the Matassa Group claims that the appointment of a small group of individual investors as lead plaintiffs is preferred by courts over the appointment of a single lead plaintiff, the case law supporting such a proposition is entirely lacking. In none of the cases cited by the Matassa Group has a court appointed multiple individual investors as lead plaintiffs rather than one individual investor who sought the appointment. Quite to the contrary, it has been held that multiple investors serving as lead plaintiff, although permissive, is a "suboptimal" result when compared to having a single investor serve as lead plaintiff. *Yousefi*, 70 F.Supp.2d at 1068.

The assertion can reasonably be made that the larger the number of proposed lead plaintiffs, the greater the dilution of control that those plaintiffs can maintain over the conduct of the putative class action. *In re Milestone Scientific Sec. Litg.*, 183 F.R.D. at 417 (citing *Chill*, 181 F.R.D. at 409). Such dilution of control can be readily expected in a consolidated case like this one in which members of the Matassa Group have retained two separate law firms to represent them. Particularly in this case, multiple lead plaintiffs like members of the Matassa Group would be hampered in their collective ability

to supervise the conduct of counsel. *Id.* Not only is its group diverse, but the Matassa Group has evidenced that it is either "unable or unwilling to agree on a single counsel to act on its behalf and serve as its voice." *In re Telxon Corp. Secs. Litig.*, 67 F.Supp.2d at 815. Furthermore, where more than one person is involved as lead plaintiff, additional costs must be incurred for intragroup communication and monitoring. This Court is not persuaded that a larger group, which claims to have suffered the largest loss because of a mechanical aggregation of those losses and which is represented by two different law firms, should be preferred over a single investor, who has alleged the largest individual loss and who is represented by a single law firm.

The arguments presented by the Matassa Group in support of their contention that this Court should not appoint a single lead plaintiff are conjectural. Nothing in the record here supports the assertion that Gleason might be unwilling or potentially unable at a later date to vigorously prosecute this action on behalf of a class of plaintiffs. Taken to their logical extreme, arguments of this sort, if accepted by a court, would essentially result in determinations that groups should always be preferred over a single investor, even where the single investors had a larger financial interest in the litigation than the group. There is no objective support in the record for any of these arguments which are totally speculative and will be rejected.

This Court finds and concludes that, as the individual coming forward as a lead plaintiff who has suffered the largest individual loss, Thomas Gleason is entitled to the statutory presumption of appointment as lead plaintiff. This presumption may be rebutted with evidence that such lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class. See 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Neither the Matassa Group nor the Tawfik Movants have offered evidence rebutting Thomas Gleason's ability to represent the class fairly and adequately. Accordingly, the Court is satisfied that the statutory presumption has not been rebutted.

The Court further concludes that as lead plaintiff Thomas Gleason satisfies the requirements of Rule 23. See § 78u–4(a)(3)(B)(iii)(I)(cc). There is no need for the Court to require any more than a preliminary showing at this stage of the case. Such a showing has been made by Thomas Gleason. A wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for the Court's later consideration of a motion for class certification. *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. at 414.

Pursuant to the PSLRA, the lead plaintiff has the right to select class counsel, "subject to the approval of the Court." 15 U.S.C. § 78u–4(a)(3)(B)(v). Plaintiff Thomas Gleason has selected and retained the law firm of Berman, DeValerio and Pease, L.L.P. as lead counsel and the law offices of Charles J. Piven, P.A. as liaison counsel. On the record here, this Court concludes that plaintiff Thomas Gleason has chosen competent and experienced lead counsel and liaison counsel. These attorneys have extensive experience in class action securities cases like this one. Indeed, there has been no challenge to the decision of plaintiff Thomas Gleason to retain such counsel. Accordingly, this Court will approve the selection of lead counsel and liaison counsel made by plaintiff Thomas Gleason.

For all the reasons stated, the motion of Thomas Gleason for appointment of lead plaintiff and to appoint lead counsel will be granted, the motion of the Matassa Group for appointment as lead plaintiffs and approval of lead counsel will be denied, and the motion of plaintiffs Jack Tawfik and Patricia Tawfik to be appointed lead plaintiffs and for the approval of proposed lead plaintiffs' selection of lead counsel and liaison counsel will be denied. An appropriate Order will be entered by the Court.